

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-26-1997

# Smith v. Phila Housing Auth

Precedential or Non-Precedential:

Docket 96-1370,96-1379

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Smith v. Phila Housing Auth" (1997). *1997 Decisions.* Paper 47.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/47

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

Nos. 96-1370 and 96-1379

_____

VERNITA SMITH,
            Appellant No. 96-1370
        v.

PHILADELPHIA HOUSING AUTHORITY; LARGHNE LAHM;
JOHN VARALLO; CLAUDE ROSS

_____

CARMEN RIVERA,
            Appellant No. 96-1379
        v.

PHILADELPHIA HOUSING AUTHORITY;
ANTHONY HOLLAND; JOHN VARALLO; CLAUDE ROSS

_____

On Appeal From the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 94-cv-07284 and 95-cv-07658)

_____

Argued January 10, 1997

BEFORE: COWEN, ALITO and ROSENN
            Circuit Judges

                                    )        (Filed February
26, 1997

Michael Donahue, Esq.
Harold I. Goodman, Esq. (argued)
Community Legal Services
1424 Chestnut Street
Philadelphia, PA 19102

        COUNSEL FOR APPELLANTS


M. Kevin Hubbard, Esq. (argued)
Philadelphia Housing Authority
2012 Chestnut Street
Philadelphia, PA 19103

---

OPINION

---

COWEN, <u>Circuit Judge</u>.

Plaintiffs in this consolidated appeal contest the amount of attorney's fees awarded by the district court pursuant to 42 U.S.C. § 1988. Specifically, they contend that the district court erred in finding $150 to be the reasonable hourly rate for the services provided by their attorney, rather than the $210 per hour rate they requested. For the reasons that follow, we will vacate the judgments of the district court and remand for further proceedings.

**I.**

Plaintiffs Vernita Smith and Carmen Rivera are indigent tenants of defendant Philadelphia Housing Authority ("PHA"). Each commenced an action in the district court pursuant to 42 U.S.C. § 1983 and the United States Housing Act, 42 U.S.C. § 1437 <u>et</u> <u>seq.</u>, in order to enforce administrative grievance awards previously issued in their favor pursuant to 24 C.F.R. §§ 966.50–.57. Smith's award required the PHA to make certain repairs to her rental unit. Rivera's award provided for a rent abatement and a rollback of a rent increase imposed by the PHA. Both Smith and Rivera were represented by Michael Donahue, Esq., of Community Legal Services ("CLS") of Philadelphia. It is not disputed that Smith and Rivera were each a "prevailing party" in their respective lawsuits, within the meaning of § 1988.

2

Plaintiffs petitioned the court for attorney's fees pursuant to § 1988, requesting an hourly rate of $210. In support of their petitions, plaintiffs each submitted two affidavits, one from Donahue and one from Lorrie McKinley. McKinley is Project Head of the Employment Law Project at CLS and Chair of the CLS Attorneys Fees Committee, which establishes the usual billing rates for CLS counsel. Donahue's affidavit noted that he has been a member of the federal bar since 1978, and has litigated over 200 cases involving the federal housing regulations, including ten class actions and four successful appeals in this Court.[1] Donahue averred that $210 per hour is a reasonable market rate for the services he rendered.

McKinley's affidavit stated that she has been practicing law since 1984 and is familiar with the market rates for civil rights attorneys in the Philadelphia area. It stated that Donahue's usual hourly rate is $210, and that this rate is consistent with the rates for attorneys of similar experience and skill in civil rights matters in Philadelphia. The latter statement is based on the CLS schedule of rates, which in turn is "based upon a survey of hourly rates charged by private law firms and individual practitioners in Philadelphia." App. at 38.

In both cases, the PHA objected to the proposed hourly rate because it was higher than the rate awarded Donahue in similar prior cases, but it offered no affidavits to support its position. The PHA did not object to the McKinley affidavit, but

---

[1]That number has since grown to five. See Farley v. Philadelphia Housing Auth., 102 F.3d 697 (3d Cir. 1996).

3

it contested the propriety and reliability of the underlying fee schedule and survey. Without holding evidentiary hearings, the district court set the hourly rate at $150 in both cases. The court cited opinions in prior cases in which Donahue had represented plaintiffs in actions brought pursuant to the Housing Act, and in which the court had set Donahue's rate at $150 per hour. This consolidated appeal followed.

## II.

The reasonableness of an award of attorney's fees is reviewed pursuant to an "abuse of discretion" standard. See Washington v. Philadelphia County Court of Common Pleas, 89 F.3d 1031, 1034 (3d Cir. 1996); Coleman v. Kaye, 87 F.3d 1491, 1509 (3d Cir. 1996), cert. denied, ___ U.S. ___, 117 S.Ct. 754 (1997); Rode v. Dellarciprete, 892 F.2d 1177, 1182 (3d Cir. 1990). "[A]n attorney's marketplace billing rate is a factual question which is subject to a clearly erroneous standard of review." Washington, 89 F.3d at 1035; see Student Pub. Interest Research Group v. AT & T Bell Labs., 842 F.2d 1436, 1442 (3d Cir. 1988). The question of whether the district court applied the appropriate standards and procedures in determining attorney's fees is a legal question subject to plenary review. See Washington, 89 F.3d at 1034-35; Keenan v. City of Philadelphia, 983 F.2d 459, 472 (3d Cir. 1992).

Generally, "a reasonable hourly rate is calculated according to the prevailing market rates in the community." Washington, 89 F.3d at 1035; see Blum v. Stenson, 465 U.S. 886, 895-96 n.11, 104 S.Ct. 1541, 1547 n.11 (1984). "[A] district court may not set

4

attorneys' fees based upon a generalized sense of what is customary or proper, but rather <u>must</u> rely upon the record." <u>Coleman</u>, 87 F.3d at 1510 (emphasis added); <u>see</u> <u>Cunningham v. City of McKeesport</u>, 807 F.2d 49, 52-53 (3d Cir. 1986). The plaintiff bears the burden of producing sufficient evidence of what constitutes a reasonable market rate for the essential character and complexity of the legal services rendered in order to make out a prima facie case. <u>See</u> <u>Washington</u>, 89 F.3d at 1035. Once the plaintiff has carried this burden, defendant may contest that prima facie case only with appropriate record evidence. <u>See</u> <u>id.</u> at 1036; <u>Cunningham</u>, 807 F.2d at 52-53. In the absence of such evidence, the plaintiff must be awarded attorney's fees at her requested rate. <u>See</u> <u>Washington</u>, 89 F.3d at 1036; <u>Cunningham</u>, 807 F.2d at 52-53; <u>Bell v. United Princeton Properties, Inc.</u>, 884 F.2d 713, 720 (3d Cir. 1989). If hourly rates are disputed, the district court must conduct a hearing to determine the reasonable market rates. <u>See</u> <u>Coleman</u>, 87 F.3d at 1510; <u>Rode</u>, 892 F.2d at 1183.

The PHA urges that the McKinley affidavit fails to establish $210 as a reasonable hourly rate because the survey upon which it is ultimately based is flawed.[2] The McKinley affidavit is based

_____

[2]The PHA now contests the validity of the McKinley affidavit on the additional ground that, while McKinley was never retained by plaintiffs, she and Donahue worked for the same organization. The Supreme Court has stated that "the fee applicant [must] produce satisfactory evidence -- <u>in addition to the attorney's own affidavits</u> -- that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." <u>Blum v. Stenson</u>, 465 U.S. 886, 895 n.11, 104 S.Ct. 1541, 1547 n.11 (1984)(emphasis added); <u>see</u> <u>also</u> <u>In re Olson</u>, 884 F.2d 1415, 1423-24 n.14 (D.C. Cir. 1989). Because the PHA did not raise this

5

in part on CLS's hourly fee schedule, which in turn is based on a survey of private firms in Philadelphia. The PHA argues that this underlying survey is insufficient to establish $210 per hour as a reasonable market rate for a Housing Act case insofar as the survey fails to differentiate among different types of litigation. Rather, the survey apparently establishes a single schedule of rates for litigation involving such diverse matters as employment discrimination, landlord-tenant law, criminal law, corporate law, divorce law, and labor law. See Evans v. Philadelphia Housing Auth., Civ. A. No. 93-5547, 1995 WL 154872, at *3 (E.D. Pa. Mar. 31, 1995) (discussing same survey), aff'd sub nom Smith v. Philadelphia Housing Auth., 79 F.3d 1139 (3d Cir. 1996). Therefore, the PHA contends, the survey is unreliable and cannot form the basis for the plaintiffs' prima facie case.

Our review is hampered both by the fact that the parties have not included the survey as part of the record on appeal and by the district court's failure to address directly the survey evidence. Rather, in Smith, the court simply stated:

> This Court determines . . . that $150.00 per hour, not $210.00 per hour, is a reasonable rate. In reaching this conclusion, this Court adopts the reasoning of four District Court Judges in the Eastern District of Pennsylvania, all of whom recently found $150.00 per hour to be a reasonable rate for Mr. Donahue's services in representing tenants in actions against the Philadelphia Housing Authority and all of whom were affirmed on appeal . . . .

issue
below, we decline to address it here.

6

Smith v. Philadelphia Housing Auth., No. 94-7284, slip op. at 5 (E.D. Pa. Feb. 15, 1996) (citing, inter alia, Evans, 1995 WL 154872; Clark v. Philadelphia Housing Auth., No. 93-4890, 1995 WL 129208 (E.D. Pa. Mar. 24, 1995), aff'd sub nom Smith v. Philadelphia Housing Auth., 79 F.3d 1139 (3d Cir. 1996); Jenkins v. Philadelphia Housing Auth., No. 94-5475, 1995 WL 105479 (E.D. Pa. Mar. 10, 1995), aff'd sub nom Smith v. Philadelphia Housing Auth., 79 F.3d 1139 (3d Cir. 1996); Smith v. Philadelphia Housing Auth., No. 94-0147, 1994 WL 376874 (E.D. Pa. July 14, 1994)). The Rivera court's analysis was even more cursory, stating only that Donahue's "rate of $210 per hour for the type of services rendered is excessive," Rivera v. Philadelphia Housing Auth., No. 95-7658, slip op. at 1 (E.D. Pa. Apr. 19, 1996), and that "[t]he court finds [$150 per hour to be] reasonable and consistent with recent decisions by th[e] court which have rejected Mr. Donahue's requested rate." Id. slip op. at 2 (citing Clark, 1995 WL 129208).

By contrast to the cases cited by the district court, the plaintiffs cite a number of district court cases that have accepted the CLS schedule. See, e.g., Rainey v. Philadelphia Housing Auth., 832 F. Supp. 127, 129 (E.D. Pa. 1993); Swaayze v. Philadelphia Housing Auth., Civ. A. No. 91-2982, 1992 WL 81598, at *2 (E.D. Pa. Apr. 16, 1992); Higgins v. Philadelphia Gas Works, 54 B.R. 928, 938 (E.D. Pa. 1985).

We decline to address whether the CLS schedule and the survey that undergirds it are sufficiently reliable and adequate given that this issue was not addressed by the district court in

7

the first instance.  As this Court recently reaffirmed, "[t]he matter of an attorney's marketplace billing rate is a factual question."  Washington, 89 F.3d at 1035.  The district court may not dispose of such a factual question "based upon a generalized sense of what is customary or proper, but rather must rely upon the record."  Coleman, 87 F.3d at 1510.  By simply relying on the hourly rate set by the court for Mr. Donahue in previous cases in which he has appeared, the district court failed to exercise its responsibility, as set forth by us most recently in Washington and Coleman, to settle upon a reasonable hourly rate based solely upon a factual record.  We therefore will remand these matters so that the district court in each case may construct an adequate record to justify an award of attorney's fees at a particular rate.

On remand, the district court should determine whether the plaintiffs have submitted sufficient evidence to establish a prima facie case.  The answer to this question will in large part hinge on whether the CLS fee schedule, and the underlying survey, are sufficiently reliable to form the basis of McKinley's affidavit testimony.  See FED. R. EVID. 703; In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 747–49 (3d Cir. 1994), cert. denied, ___ U.S. ___, 115 S.Ct. 1253 (1995).  Plaintiffs will have the opportunity to submit any additional evidence they believe to be appropriate.  The PHA may continue to rely simply on its contention that the plaintiff's evidence is insufficient to establish a prima facie case that $210 is a reasonable hourly fee, and rest solely on "answers or briefs".  Bell, 884 F.2d at

8

720. Alternatively, it may choose to supplement this legal argument by adducing evidence to dispute the affidavit testimony submitted by the plaintiffs. If the PHA raises a factual issue as to the reasonableness of Donahue's requested rate, it "must introduce [evidence] upon which the challenge is based." Id. (emphasis added).[3]

## III.

For the foregoing reasons, the judgments of the district court will be vacated and these matters remanded for further proceedings consistent with this opinion.

Costs taxed against appellees.

---

[3]We express no opinion as to whether $150 or $210, or some other figure, represents a reasonable hourly billing rate for Mr. Donahue's services in this matter.