

Opinions of the United
States Court of Appeals
for the Third Circuit

7-18-2001

# Loughner v. University of Pittsburgh

Precedential or Non-Precedential:

Docket 00-1561

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

## Recommended Citation

"Loughner v. University of Pittsburgh" (2001). *2001 Decisions.* Paper 157.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/157

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 18, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 00-1561 and 00-1613

CATHERINE M. LOUGHNER,
        Appellant No. 00-1613

v.

THE UNIVERSITY OF PITTSBURGH;
PRESBYTERIAN UNIVERSITY HOSPITAL,
a Pennsylvania corporation tdba UNIVERSITY OF
PITTSBURGH MEDICAL CENTER tdba UNIVERSITY OF
PITTSBURGH MEDICAL CENTER SYSTEMS,

        Presbyterian University Hospital tdba University of
        Pittsburgh Medical Center and/or University of
        Pittsburgh Medical Center Systems,
        Appellant No. 00-1561

Appeal from the United States District Court
For the Western District of Pennsylvania
D.C. No.: 97-cv-00734
District Judge: Honorable William L. Standish

Submitted Under Third Circuit LAR 34.1(a)
May 2, 2001

Before: MANSMANN, NYGAARD, and ROSENN,
Circuit Judges.

(Filed: July 18, 2001)

        Michael E. Hoover
        Diefenderfer, Hoover, Boyle & W ood
        1420 Grant Building
        Pittsburgh, PA 15219-2201
         Counsel for Catherine M. Loughner

William A. Pietragallo, II
Pamela G. Cochenour
Lawrence J. Baldasare
Bryan K. Shreckengost
Pietragallo, Bosick & Gordon
301 Grant Street
One Oxford Centre, 38th Floor
Pittsburgh, PA 15219
 Counsel for Presbyterian University
Hospital, etc.

OPINION OF THE COURT

ROSENN, Circuit Judge.

This appeal raises a troublesome and recurring problem pertaining to the award of attorneys' fees and costs to a prevailing party under a federal statute and the duty of a district court in dealing with the prevailing party's petition for fees. Catherine M. Loughner ("Loughner") brought an action under, inter alia, the Fair Labor Standards Act ("FLSA"), against The University of Pittsbur gh ("University") and the Presbyterian University Hospital ("Hospital"),1 for payment of unpaid wages and overtime compensation due her on the termination of her employment. Specifically, she claimed $3,169.28 in "base pay" unpaid wages and $25,218.06 in overtime pay pursuant to federal and Pennsylvania law. On the eve of trial the parties, stipulating that Loughner was the prevailing party, settled all claims, including overtime wages, liquidated damages, and interest, for $27,000.

The District Court granted Loughner's counsel almost all of the hours and costs requested in his petitions, but at a lower hourly rate. In all, the Court reduced the amount of $118,725.00 claimed for attorneys' fees and awarded Loughner's counsel $88,655 in fees and $2,875.56 in costs. The Defendants timely appealed. We vacate the award and remand.

_____

1. Together, the University and the Hospital will be referred to as "Defendants."

I.

Loughner brought an action against the Defendants under the Fair Labor Standards Act, the Pennsylvania Wage Payment and Collection Law, and the Pennsylvania Minimum Wage Act of 1968, for failure to pay her overtime wages. In a complaint replete with aver ments of, inter alia, racial discrimination, Loughner claimed only that she was entitled to certain base pay and overtime pay under an employment contract and under state and federal wage and hour laws. On the day before trial, December 6, 1999, the parties settled.

Loughner's counsel, Michael E. Hoover ("Hoover"), filed a petition for attorneys' fees and costs, along with an affidavit concerning the reasonableness of the hours and hourly rate claimed. Hoover sought 474.9 hours at $250 per hour for his time, 2.2 hours at $60 per hour for a paralegal, and $2,782.74 in costs. Hoover performed all of the attorney's work on this case himself. He provided no separate cost assignment for his administrative, paralegal, and non-legal roles, instead charging a maximum rate for all of his tasks.

The Hospital opposed Hoover's petition. The Hospital contended that Hoover presented no objective, admissible evidence of the prevailing market rate in the Pittsburgh, Pennsylvania area for work of a similar type. The Hospital also argued that Hoover failed to assign dif ferent hourly rates to various tasks he performed personally, from administrative to legal. The Hospital also complained about the excessive number of hours claimed in this r elatively simple "wage and hour" case. Concerning costs, the Hospital complained that Hoover neither supplied an explanation as to why they were incurred, nor supplied supporting documentation.

Hoover, requesting an additional $3,300 in fees and $46.82 in costs, supplemented the petition without leave of court. Later, again without leave of court, Hoover filed affidavits from three attorneys 2 who attested to the reasonableness of the $250 hourly rate and the number of hours expended in Loughner's action. Hoover also sought to

_____

2. These attorneys were all employment discrimination practitioners.

3

discover the number of hours expended and hourly rates charged by defense counsel.

The Hospital moved to strike the supplemental affidavits, but the District Court denied the motion. On February 11, 2000, the District Court held a hearing at which it allowed Hoover to serve interrogatories on the Hospital concerning the hours expended in defending the action. The Hospital stated at the hearing that it did not keep separate records for the defense of this action because it accounted for and billed together the defense of all three of Loughner's actions.[3] The District Court acknowledged that this was defense counsel's position, and that Hoover could expect no answer to the interrogatories. See Appx. 219-220 ("Then say that. If you don't have separate billings just -- . . . tell him that.").

After serving defense counsel with interrogatories, Hoover moved for sanctions for defense counsel's failure to respond. Defense counsel reiterated that it did not possess separate records, and was unable to answer Loughner's interrogatories. The District Court later denied the motion for sanctions.

Hoover filed a second supplement to the fee petition, requesting an additional $4,625 in fees and $46 in costs for time spent preparing the supplemental fee petitions, in obtaining affidavits from local attorneys concerning rates charged for similar actions, and in attending hearings. The Hospital opposed the second supplement for the same reasons asserted earlier, including that the hours and hourly rates were excessive.

On April 14, 2000, the District Court granted Hoover's petitions, including an aggregate of 506.6 hours of attorney's time claimed, but the Court disallowed the paralegal time and reduced the hourly rate to $175 per hour. The Court ordered the Defendants to pay $88,655 in fees and $2,875.56 in costs. The extent of the District

_____

3. Loughner filed separate civil rights and retaliation actions against Defendants. These actions are still pending; they were not part of the settlement of this action. Defendants' counsel represents Defendants in all of Loughner's actions against them.

4

Court's evaluation on the record was the brief statement that:

> I'll accept the number of hours you claim since[the Defendants are] not able to come up with their own number of hours to say, for instance, they spent only half as many hours.
>
> I've never had anybody ask for the number of hours a Defendant has spent; but if you can't come up even with a ballpark figure and say we only spent half as many hours as he spent, I have to suggest that -- rather, infer that the Defendant spent a lot of hours also; and I'm inclined to accept the number of hours claimed by the Plaintiff, that's all, and I'll decide the matter.

There is no evidence that the District Court evaluated further the number of hours awarded. In lowering the hourly rate from $250 per hour to $175 per hour , the Court reasoned that "the practice of employment discrimination law . . . is much more complex than a wage and overtime case." The Court also noted that Hoover "has not attempted to adjust his hourly rate depending on the type of work he was performing." The Court was "satisfied that plaintiff . . . adequately set forth the costs incurred in pr osecuting this action."

Loughner appealed concerning the hourly rate r eduction; Defendants appealed concerning the number of hours and costs awarded.

II.

The District Court had federal question jurisdiction. See 28 U.S.C. S 1331. The District Court's entry of an order directing payment of attorneys' fees and costs is a final order. We have appellate jurisdiction of the timely notices of appeal. See 28 U.S.C. S 1291.

We review de novo the standards and procedures applied by the District Court in determining attor neys' fees, as it is a purely legal question. See Smith v. Philadelphia Parking Auth., 107 F.3d 223, 225 (3d Cir. 1997). However, the reasonableness of an award of attor neys' fees is reviewed

for abuse of discretion. See Washington v. Philadelphia County Ct. of Common Pleas, 89 F.3d 1031, 1034–35 (3d Cir. 1996). The District Court's findings of fact are subject to "clearly erroneous" review. See id. at 1039. A fee award "is within the district court's discretion so long as it employs correct standards and procedures and makes findings of fact not clearly erroneous." Pennsylvania Environ. Def. v. Canon–McMillan, 152 F .3d 228, 232 (3d Cir. 1998) (internal quotation omitted).

The award of attorneys' fees in this case is authorized under the Fair Labor Standards Act, which pr ovides "a reasonable attorney's fee to be paid by the Defendant, and costs of the action" to a prevailing plaintiff. See 29 U.S.C. S 216(b). In cases like this, we use the "lodestar" formula, which requires multiplying the number of hours reasonably expended by a reasonable hourly rate. See Hensley v. Eckerhart, 461 U.S. 424 (1983); Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546 (1986); Pennsylvania Environ. Def., 152 F .3d at 232. "When the applicant for a fee has carried his burden of showing that the claimed rates and number of hours are r easonable, the resulting product is presumed to be the reasonable fee to which counsel is entitled." Delaware V alley Citizens' Council, 478 U.S. at 564 (internal quotation omitted).

The District Court must articulate the basis for a fee award. See Pennsylvania Environ. Def., 152 F.3d at 232 ("the district court must `provide a concise but clear explanation of its reasons for [a] fee award.' "). Even though "a district court's findings, when adopted verbatim from a party's proposed findings, do not demand mor e stringent scrutiny on appeal," Lansford–Coaldale Joint Water Auth. v. Tonolli Corp., 4 F.3d 1209 (3d Cir . 1993), the record must reflect, at least, that the trial court "fully comprehended the factual and legal issues and adequately perfor med the decision reaching process." Pennsylvania Environ. Def., 152 F.3d at 233. We have difficulty ef fectively reviewing a grant of attorneys' fees for abuse of discretion without findings of fact and a clear explanation of the reasons a District Court granted the fee, especially when, as here, the award is more than triple the amount of both the overtime claimed in the complaint, and the amount for which the plaintif f settled.

6

A. Time Charged

This court has held that in calculating the hours reasonably expended, the District Court "should review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are `excessive, redundant, or otherwise unnecessary.' " Public Int. Research Group of N.J., Inc. v. Windall, 51 F .3d 1179, 1188 (3d Cir. 1995) (internal citation omitted); see also Rode v. Dellarciprete, 892 F.2d 1177, 1183 (3d Cir. 1990) ("The district court should exclude hours that are not reasonably expended."). Thus, the District Court has a positive and affirmative function in the fee fixing pr ocess, not merely a passive role. It should reduce the hours claimed by the number of hours spent litigating claims on which the party did not succeed, that were distinct from the claims on which the party did succeed, and for which the fee petition inadequately documents the hours claimed. See id. The party opposing the fee award has the bur den to challenge "by affidavit or brief with sufficient specificity to give fee applicants notice, the reasonableness of the r equested fee." Dellarciprete, 892 F.2d at 1183. However, "[t]he district court cannot `decrease a fee award based on factors not raised at all by the adverse party.' " Id.

Defendants argue that the District Court's failure to conduct any analysis of the claimed number of hours constitutes reversible error to the extent it shifted the burden of proof of the reasonableness of the request from Loughner onto them. Defendants maintain that it was unreasonable for the District Court to accept"wholesale" all of the hours Hoover claimed. See App. Br . at 25. Defendants also argue that the District Court granted Hoover's request for the inappropriate r eason that they were unable to provide a precise allocation of the hours spent defending the action, and that such a rationale would convert the fee award into a sanction. Defendants further argue that Hoover's request was unr easonable per se when measured against the standards of amount of success and billing judgment. Hoover claims to have expended 506 attorney hours on a case presenting "narrow" issues which never went to trial. See App. Br. at 30.

7

Regrettably, the District Court articulated no findings in the record supporting its award. The memorandum accompanying the award order simply states "the court conclude[s] that, based on Defendants' failur e to even attempt to estimate the number of hours and costs expended in defending this action, the court would accept the number of hours claimed by plaintiff 's counsel as reasonable." The Court does not explain how defense counsel's inability or failure to provide the hours they charged on this case, alone, supports the conclusion that 506 attorney hours is reasonable to settle, without trial, a simple wage and hour case.4 The District Court had earlier commented that it did not "know . . . the r elevance of [the amount of time spent by the defense in this case]." Yet the Court based the award solely on the Defendants' failure to respond to the interrogatories inquiring about the amount of time spent by defense counsel in this case. The District Court performed scant analysis, if any, of the hours in Hoover's petition. It provides us no findings-- not even a comment -- on the reasonableness of a claim of over 120 hours for communications between the plaintif f and her lawyer. We have no basis for deter mining the reasonableness or accuracy of many char ges that combine hours for several tasks. The District Court's draconic explanation offers no basis for review.

Hoover argues that the Defendants failed to raise and support their objections, as was their burden. He argues that the 25-page petition for attorneys' fees itemized the work performed, dates, and amounts of time; that plaintiff met her burden of production, and that the burden shifted to Defendants to disprove the reasonableness of her petition. No such rigid burden shifting is established in our cases. The Defendants raised substantive objections to the reasonableness of Hoover's fee petition. The Court,

_____

4. We can infer the District Court meant that if Defendant's counsel spent many hours on this action defending unr easonable claims, this could constitute evidence that plaintiff 's counsel expended a reasonable time on plaintiff 's claims. This is a non sequitur. We are uncertain whether this was the District Court's rationale, and we are equally uncertain how this premise leads to the conclusion that plaintiff 's petition must be reasonable.

8

therefore, had an obligation to evaluate the petition in light of the objections, and to explain why it accepted carte blanche the plaintiff 's claim for time expended and rejected the Defendants' objections.

Hoover makes an emotional appeal that we appr ove the high number of hours claimed in his petition, alleging that the Defendants were engaged in "trench warfare." However, the District Court did not make a finding that this otherwise straightforward wage and hour case was complicated by Defendants' conduct and we see nothing in this record to support one.5

Accordingly, we are constrained to conclude that the District Court erred by failing to perfor m a sufficient analysis of Hoover's petition in light of Defendants' objections and the decisions of this Court. Ther efore, we will remand for an analysis and findings concerning the reasonableness of the hours claimed in the fee petitions with the supplements thereto.

B. Hourly Rate of Attorney Compensation

Hoover argues on cross-appeal that the District Court inappropriately reduced the hourly rate claimed. Generally, a reasonable hourly rate is calculated accor ding to the prevailing market rates in the relevant community. See Blum v. Stenson, 465 U.S. 886, 895 (1984); Dellarciprete, 892 F.2d at 1183. The court "should assess the experience and skill of the prevailing party's attor neys and compare their rates to the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Dellar ciprete, 892 F.2d at 1183. The prevailing party "bears the bur den of establishing by way of satisfactory evidence, `in addition to [the] attorney's own affidavits,' . . . that the requested hourly rates meet this standard." W ashington v. Philadelphia Cty. Ct. of Common Pleas, 89 F .3d 1031, 1035 (3d Cir. 1996) (citing Blum v. Stenson , 465 U.S. 886, 895 n.11 (1984)). The starting point in ascertaining a reasonable hourly rate "is the attor ney's usual billing rate,

_____

5. The District Court implied, and we believe, that in general, a wage and overtime case is an uncomplicated cause of action.

9

but this is not dispositive." Public Inter est Group, 51 F.3d at 1185.

The District Court held that $250 was excessive based on the type of claims asserted in this action. The Court was not persuaded by the three affidavits submitted by employment discrimination practitioners because it felt that an employment discrimination case is "much mor e complex than a wage and overtime case." The District Court also noted that Hoover did not adjust his hourly rate depending on the type of work he performed.6 Therefore, the District Court awarded a flat $175 hourly rate to all of Hoover's awarded hours.

Having rejected the prevailing party's evidence of rates, the District Court was free to affix an adjusted rate. However, the Court did not explain sufficiently how it reached $175 per hour for all hours worked. The Court acknowledged that Hoover performed nearly all of the work on this case by himself, and that Hoover claimed his highest billable rate for all work perfor med. A claim by a lawyer for maximum rates for telephone calls with a client, legal research, a letter concerning a discovery request, the drafting of a brief, and trial time in court is neither fair nor reasonable. Many of these tasks are ef fectively performed by administrative assistants, paralegals, or secr etaries. As such, to claim the same high reimbursement rate for the wide range of tasks performed is unr easonable. Having prevailed in the litigation is not cause to overwhelm the losing party with unreasonable fees and costs."Hours that would not generally be billed to one's own client ar e not properly billed to an adversary." Public Interest Group, 51 F.3d at 1188.

We see no error of the District Court in reducing Hoover's hourly rate. However, it failed to reach a reasonable rate for the separate tasks performed. Deter mination of the hourly rate for legal services in the applicable marketplace is a finding of fact; it can be reversed if clearly erroneous. See Public Interest Group of N.J. v. W indall, 51 F.3d 1179, 1188 n.12 (3d Cir. 1995). We conclude that on its face, $175 per

_____

6. This would have been a valid basis for adjusting the hours claimed as well.

10

hour is an unreasonable award for the wide range of tasks performed by Hoover. The District Court should reach a reasoned conclusion as to the prevailing market rate for the type of tasks delineated in Hoover's petition.

C. Costs

Hoover submitted a detailed breakdown of costs incurred, as well as an Affidavit as to the necessity and reasonableness of the costs. The Hospital objected to all of the claimed costs for lack of evidence supporting the reasonableness and necessity of the expenses. The extent of the District Court's analysis on the costs issue was a statement that "[a]fter consideration, the court is satisfied that plaintiff has adequately set forth the costs incurred in prosecuting this action, and, therefor e, plaintiff will be awarded costs in the amount of $2,875.56."

Attorneys' fees and costs are frequently analyzed together, so the same standards apply to our review of costs as to our review of attorneys' fees. A fee petition must "be specific enough to allow the district court to determine if the hours claimed are unreasonable for the work performed." Washington v. Philadelphia Cty. Ct. of Common Pleas, 89 F.3d 1031, 1037 (3d Cir . 1996) (internal citations omitted). In this case, the record contains a one-page statement of costs, and an Affidavit swearing to their accuracy. The one-page statement contains dates and descriptions, but does not include supporting data explaining the relevant purpose of the expenditures. Counsel failed to provide the District Court with any reasonable basis justifying the expenditur es in this case. There is no evidence in the record under which we can evaluate whether the District Court abused its discr etion in allowing the claim for costs.

III.

The award of the District Court will be vacated, and the case remanded to the District Court for further proceedings consistent with this opinion. Costs taxed against Catherine M. Loughner as appellant/cross-appellee.

11

NYGAARD, Circuit Judge, Concurring and Dissenting.

Although I agree with the Majority's analysis and conclusions concerning the hourly rate, I would also affirm the District Court with respect to the number of hours worked and the costs expended. Loughner's attor ney submitted twenty-five pages of itemized recor ds specifying the date when the work was performed, the attorney or paralegal involved, the details of the assignment, the amount of time spent, and the hourly rate char ged. This documentation provides a sufficient basis upon which to make an award. The Hospital opposed Loughner's fee petition by simply asserting that the amounts sought were "unreasonable and excessive given the uncomplicated nature of [Loughner's] wage and overtime claims." In response to the Hospital's position, Loughner's counsel filed a motion to compel production of documents indicating the number of hours expended by defense counsel on this case. The District Court directed Loughner to serve interrogatories on the Hospital to enable her to obtain the information. As directed, Loughner's counsel served the Hospital with four interrogatories regar ding the number of hours it expended, its hourly rates, and the costs incurred in defending this action. The Hospital failed to comply and instead objected to each interrogatory.

After receiving the Hospital's objections, Loughner's counsel filed a motion for sanctions. As the Majority notes, the Defendants contended that they could not r espond because they had consolidated the accounting and billing for all three of Loughner's actions. The District Court Judge found this response unacceptable: "I'm going to tell you that really surprises me. I was in a law fir m for 23 years, and I worked for the same client on a number of dif ferent matters, and I could--you always knew how many hours you spent on each matter . . . . This was a claim for fair labor -- this is a claim for -- under the -- completely different from some of the others, just a back pay matter." J.A. at 264-65. Based on the non-responsiveness of defense counsel, the Judge concluded "[b]ut if you can't come up even with a ballpark figure and say we only spend half as many hours as he spent, I have to suggest that -- rather, infer that the Defendant spent a lot of hours also; and I'm

12

inclined to accept the number of hours claimed by the Plaintiff . . . ." Id. at 268. This is not unlike the summary judgment context, in which a party cannot simply r ely on bare allegations or denials. Thus, in the absence of any evidence to the contrary of what she submitted, the Judge concluded that Loughner's hours were reasonable. I think this action falls well within the District Court's considerable discretion.

The Majority argues that the District Court failed to review whether Loughner's hours were r easonable. I disagree. As indicated above, Judge Standish attempted to gather data in order to assess the reasonableness of the numbers of hours allegedly expended by Loughner's counsel. However, the Defendants refused to cooperate. They failed even to attempt to calculate the number of hours they spent on the instant matter, even when directed by the Court to do so. Regardless of the Defendants' billing system, they cannot simply thumb their nose at the Court's request. When they refused, the District Court merely accepted and deemed admitted the allegations of the Plaintiff. The District Court is accor ded wide and considerable discretion in awarding fees. It is in the best position to know the complexity of the issues pr esented, and the nature and quality of the work per formed by the attorneys. Accordingly, I would defer to the District Court's finding and affirm.1

Defense counsel's conduct throughout the litigation also supports the District Court's finding. Loughner's counsel alleged, and the District Court obviously agr eed, that the number of hours he expended in this case was a dir ect and proximate result of the "trench warfare" employed by the Defendants. It seems that defense counsel played a game of delay and deter. For example, the Defendants failed to allow discovery, which necessitated motions to compel and motions for sanctions. They unsuccessfully appealed every

_____

1. I disagree emphatically with the majority's characterization of the District Court Judge's explanations as "Draconic." Maj. Op. at 8. I doubt that either a dragon or the infamous lawgiver of Athens would be comfortable in the presence of the esteemed, learned, and gentle Judge who presided over this matter.

report and recommendation of the Magistrate Judge. They opposed every procedural motion filed by Loughner, even the most routine. Their flurry of motions, including those to dismiss and for summary judgment, also added to the fee obligations of Loughner. During the hearing in which Loughner sought to compel documents evidencing the number of hours expended by defense counsel, her counsel explained:

> I think that what we're saying is plaintif f 's counsel just stood toe-to-toe with the defense in this case. A lot of the hours that were expended here, as Mr . Hoover's time records show, were related to struggles over discovery and production of documents and so forth. Some of that wound up before magistrate Judge Sensenich. Judge Sensenich offered sanctions in this case. Mr. Hoover said no, that's fine. W e'll proceed if we can just get the information.

Id. at 218. The Court merely responded to this conduct.

In response to the "trench warfar e" of the Defendants, Loughner sought discovery of the number of hours expended by defense counsel. When the Defendants r efused to provide answers, the District Court dir ected Loughner's counsel to submit interrogatories to defense counsel. In spite of the court order, the Defendants refused to answer the interrogatories; thus Loughner was for ced to file a motion for sanctions. The Court thereafter found that Loughner had met her burden as to the number of hours expended.

Defense counsel's failure to respond constituted a waiver of its right to challenge the content of Loughner's affidavits concerning the number of hours spent. And, I believe that the District Court's conclusion that Loughner sustained her burden as to the reasonableness of the number of hours expended by her counsel is eminently reasonable. The District Court apparently believed Loughner and compensated her attorney for the expensive game of legal "chicken" that he was forced to play by Defendant's attorneys. In my view, these findings do not constitute an abuse of discretion.

14

With respect to Loughner's counsel's r equest for reimbursement of costs in the amount of $2,875.56, the Defendants argued that the request should be denied in its entirety due to a lack of documentation. However, Loughner's counsel submitted a detailed breakdown of the requested costs and an affidavit as to their reasonableness. Thus, the District Court found that Loughner pr esented an adequate justification for the costs incurr ed in prosecuting this action. Given the wide latitude of the District Court in this area, I would affirm the awar d of costs.

Therefore, I respectfully dissent.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit