**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2513

_____

A.B., By and Through His Parents and Natural Guardians, F.B. and
N.V., of Effort, PA,
                                                    Appellants
v.

PLEASANT VALLEY SCHOOL DISTRICT

_____

On Appeal from United States District Court
for the Middle District of Pennsylvania
(D. C. Civil No. 3-17-cv-02311)
District Court Judge: Honorable A. Richard Caputo
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a) on
September 22, 2020
_____

Before: SMITH, *Chief Judge*, McKEE and JORDAN, *Circuit Judges*

(Opinion filed:  December 3, 2020)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and under I.O.P. 5.7 does not
constitute binding precedent.

McKEE, *Circuit Judge*.

The parents and natural guardians of A.B. appeal the district court's partial denial of attorney's fees incurred in obtaining relief from the defendant school district based upon their claim that the district denied A.B. a free and appropriate public education as required by the Individuals with Disabilities Education Act[1] and § 504 of the Rehabilitation Act of 1973.[2] For the reasons that follow, we will affirm the district court.[3]

## I.

We review the reasonableness of an award of attorneys' fees for an abuse of discretion.[4] An abuse of discretion occurs when the record shows that "no reasonable person would adopt the district court's view."[5] Whether the district court applied the proper standards or procedures is a question of law subject to de novo review.[6] The district court's factual findings, including the "marketplace billing rate," are reviewed for clear error.[7] We may not "upset a trial court's exercise of discretion on the basis of a visceral disagreement with the lower court's decision," nor may we "reverse where the trial court employs correct standards and procedures, and makes findings of fact not clearly erroneous."[8]

---

[1] 20 U.S.C. § 1400 *et seq.*
[2] 29 U.S.C. § 794.
[3] The district court had jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 20 U.S.C. § 1415(i)(3)(a). We have appellate jurisdiction pursuant to 28 U.S.C. § 1291.
[4] *Rode v. Dellarciprete*, 892 F.2d 1177, 1182 (3d Cir. 1990).
[5] *Id.*
[6] *Student Pub. Interest Research Grp. of N.J., Inc. v. AT & T Bell Labs.*, 842 F.2d 1436, 1442 n.3 (3d Cir. 1988).
[7] *Washington v. Phila. Cty. Court of Common Pleas*, 89 F.3d 1031, 1035 (3d Cir. 1996).
[8] *Id.* (internal citations omitted).

Appellants, as the prevailing parties, had to prove that the "request for attorney's fees [wa]s reasonable."[9] Thus, they had to "submit evidence supporting the hours worked and rates claimed."[10] They needed to show, "in addition to [their attorneys'] own affidavits," that the requested hourly rates represent the prevailing market rates in the relevant community.[11]

The district court did not err in concluding that Appellants did not make a prima facie showing that the rates requested represented the market rates.[12] The only evidence Appellants submitted in support of this claim was their own testimony and affidavits. They failed to submit the requisite additional evidence, such as evidence that the rates requested are commonly awarded in similar cases in the area.[13]

Moreover, the party opposing the attorneys fee award may "challenge, by affidavit or brief . . . the reasonableness of the requested fee."[14] If the "hourly rates are disputed, the district court must conduct a hearing to determine the reasonable market rates."[15] Even if Appellants had presented a prima facie case, Appellees properly disputed the fee request. Accordingly, the district court held a hearing.

Appellants argue that, having held a hearing, the court erred in limiting the relevant market to Northeastern Pennsylvania and improperly based the fee award on a

---

[9] *Rode*, 892 F.2d at 1183.

[10] *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).

[11] *Washington*, 89 F.3d at 1035 (internal citations omitted).

[12] *See* App. 14 ("[Appellants] failed to make a prima facie showing of the prevailing market rate.").

[13] *See Borrell v. Bloomsburg Univ.*, 207 F. Supp. 3d 454, 510 (M.D. Pa. 2016).

[14] *Rode*, 892 F.2d at 1183.

[15] *Smith v. Phila. Hous. Auth.*, 107 F.3d 223, 225 (3d. Cir. 1997).

"generalized sense of what is usual and proper."[16] Additionally, according to Appellants, after the court determined the market rates, it erroneously reduced the lodestar used in determining the appropriate fee.

"[T]he relevant rate is the prevailing rate in the forum of the litigation" unless "the special expertise of counsel from a distant district is shown" or "local counsel are unwilling to handle the case."[17] Appellants' lead attorney practices in Northeastern Pennsylvania. That is also where the dispute arose and the forum for the litigation. Although Appellants claim that the paucity of special education lawyers able to take this case in Northeastern Pennsylvania required expanding the relevant market,[18] the district court concluded that one of Appellants' own submissions refuted that argument. Accordingly, the court's decision to limit the relevant market to Northeastern Pennsylvania was not clear error.

The court also appropriately relied on record evidence to set the fee rates lower than the rates Appellants requested. Only one of Appellants' submissions addressed the "Northeastern and Central Pennsylvania" market, but the district court concluded that this verification was "appropriately contested by the [school] [d]istrict's submissions."[19] Therefore, contrary to Appellants' claim, the court did not set the rates simply based on a generalized sense of what is usual and proper. Rather, the court's exercise of discretion

---

[16] Appellants' Br. at 40 (citing *Coleman v. Kaye*, 87 F.3d 1491, 1510 (3d Cir. 1996)).
[17] *Interfaith Cmty. Org. v. Honeywell Int'l, Inc.*, 426 F.3d 694, 704, 705 (3d Cir. 2005), *as amended* (Nov. 10, 2005) (internal citations and quotation marks omitted).
[18] Appellants' Br. at 27.
[19] App. 13–14 (internal quotation marks omitted).

was "based on the parties' submissions and the evidence adduced at the hearing."[20] The court appropriately determined the market rates by looking to "the rates prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[21]

Finally, Appellants argue that the district court "erred in substantially reducing the lodestar."[22] District courts, however, retain broad discretion to adjust the lodestar downward to account for the prevailing party's limited success.[23] "This general reduction accounts for time spent litigating wholly or partially unsuccessful claims . . . ."[24] "[H]ow to measure the degree of success is left to the district court's discretion."[25]

The district court noted that there was a "significant differential between the relief requested and the relief received," and Appellants' attorneys did not "succe[ed] on nearly all (if not all) the theories [they] submitted to the Hearing Officer."[26] Accordingly, based on Appellants' limited success and significant amount of time spent "litigating wholly or partially unsuccessful claims," the court was well within its discretion to reduce the lodestar.

## II.

---

[20] App. 14.
[21] *Rode*, 892 F.2d at 1183.
[22] Appellants' Br. at 42.
[23] *Eckerhart*, 461 U.S. at 436–437.
[24] *Rode*, 892 F.2d at 1183.
[25] *Mancini v. Northampton Cty.*, 836 F.3d 308, 321 (3d Cir. 2016).
[26] App. 17.

For the reasons stated above, we will affirm the district court's award of attorneys' fees to Appellants.